## Case No. 4,287.

### The EDMUND LEVY.

[6 Ben. 371.][2]

Circuit Court, S. D. New York. Feb., 1873.

W. R. Beebe, for libellants.
R. D. Benedict, for claimant.

## Case No. 4,288.

### The EDMUND LEVY.

[8 Ben. 144.][1]

District Court, S. D. New York. June, 1875.

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

Beebe, Wilcox & Hobbs, for libellants.
John A. Foley, for the Levy.
Goodrich & Wheeler, for the Sumner.

BLATCHFORD, District Judge. This libel is filed by the owners of the canal boat Katie T. Gardner, to recover against the steamtug Edmund Levy and the steamtug W. A. Sumner, for the damages sustained by such owners, through a collision which took place in the East river, off Brooklyn, on the 30th of December, 1873, in the day time, between the canal boat and a barge in tow of the Sumner, while the canal boat was in tow of the Levy. The tide was ebb. The Sumner was going up along the Brooklyn shore, against the tide, with the barge on her port side, the stem of the barge projecting some distance ahead of the stem of the Sumner. The Levy was towing astern of herself, from Brooklyn to New York, by a hawser, two canal boats. One of them, the Lappan, was towed stem foremost, a hawser running from her bow to the stern of the Levy. The Gardner (the libellants' boat) was towed stern foremost, astern of the Lappan, a line running from the stern of the Gardner to the stern of the Lappan. The Levy, in addition, had a canal boat lashed to her side, which she was towing. The bow of the barge alongside of the Sumner came into collision with the starboard side of the Gardner, and damaged her.

The Gardner was lying at the lower side of a pier at Brooklyn, with her stern towards the river. The Lappan was lying between the Gardner and the river, alongside of the same pier, with her stem towards the river. Both boats were to be towed by the Levy to the same pier in New York, across the East river. The Levy came to the end of the pier at which the two boats were lying, and got a hawser from her own stern to the bow of the Lappan. Then, by direction of those in charge of the Levy, a line was made fast between the stern of the Lappan and the stern of the Gardner, by which to tow the latter boat. Then the master of the Levy gave directions that the canal boats should be cast loose from the pier, and that was done, and the Levy proceeded to tow out the boats.

The libel alleges that the Sumner, upon perceiving the Levy towing out the Lappan, slowed until the Lappan's stern had reached the end of the pier, and then, without waiting for the Gardner to get out, went ahead again, and, as the Levy and her boats felt the influence of the wind and tide, the Gardner was carried down, by such influence, towards the Sumner and upon her course, and the onward course of the Sumner and the swinging of the Gardner brought the stem of the Sumner's barge in contact with the starboard side of the Gardner, a little abaft amidships; that the Gardner was without fault; that the collision occurred by the combined fault of the Levy and the Sumner; that the Levy was in fault in attempting to tow out from the pier two canal boats, one behind the other, across a strong tide and wind, when it was apparent she could not control them; and that the Sumner was in fault in coming up so close along the docks, in not stopping in time to avoid the collision, and, having the Levy upon her starboard hand, in not taking measures in time to avoid her.

The answer of the Levy avers that the Sumner was not more than 100 feet from the pier; that there was plenty of room in the river, and no obstruction in the river; that, at the time of the collision, the Levy was over 200 feet from the pier; that no whistle was blown, nor any signal given, from the Sumner, to announce her approach; and that the collision was not caused by any fault on the part of the Levy, but was caused by the negligent manner in which those in charge of the Gardner attached her tow line to the Lappan, and by the negligence of those in charge of the Sumner, in that she came up so close along the docks, and did not stop in time to avoid the collision, and did not give any signal, or blow any whistle, to give warning of her approach.

The answer of the Sumner sets forth, that the Sumner was proceeding up the river at a distance of about 400 yards from the Brooklyn shore; that, when she was abreast of the second pier below the pier at which the Levy was, her pilot saw the Levy coming out with a tow, and, almost immediately, saw that there was more than one boat in tow, and at once stopped and backed; that the Levy and her tow were swept down by the tide, and ran across the bows of the Sumner, and carried the Lappan safely across, but the stern of the Gardner was, by reason of her being light and towed by the stern, unable to be steered or controlled, and her stern sheered to the right, barely clearing the bow of the Sumner's barge, and then her starboard side was swept by the force of the tide upon the bow of the Sumner's barge, but the Levy kept on her course

and took the Gardner across the river; that the Sumner was without fault; that she was well out in the river; that the Levy was discovered at a distance of at least 300 yards; that the Sumner was at once stopped and backed, and was going astern when the collision happened; that the Gardner was in fault in being towed by the stern and in being attached by a hawser, thus depriving herself of a helm, and by a hawser passed out from a cleet and not over the centre of the stern; and that the Levy was in fault in not giving notice of her intended movement and in towing the Gardner by the stern.

(1.) As to the negligence alleged against the Gardner, it is said that her tow line was attached by herself to the Lappan in a negligent manner, and that it passed out from a cleet on her side to the Lappan, and not over the centre of her stern, so that she was not towed in a straight direction after the Levy and the Lappan, but was caused to sheer towards the Sumner. I am not satisfied, on the evidence, that the manner in which the line ran from the Lappan to the Gardner and pulled on the latter, had any part in contributing to the collision.

Again, it is contended that the Gardner was in fault in allowing herself to be towed astern, on a hawser, and not alongside of the Levy, and, also, in allowing herself to be towed stern foremost, so that she could have no use of her helm. I am not satisfied, on the evidence, that, if the Gardner had been towed bow foremost, in the same relative position, the use of her helm would have prevented the collision. But, at all events, if her being towed stern foremost, and her not being towed alongside of the Levy, contributed to the collision, and can be regarded as faults, they are faults for which the Levy is responsible, and not the Gardner. Of course, as between the Gardner and the Levy, the Levy alone is responsible for those faults, if they were faults. As between the Gardner and the Sumner, the Levy had, for the time being, assumed control of the position which should be occupied by the Gardner, and the Levy alone can be held to respond to the Sumner for such position of the Gardner. If the Sumner were suing for injuries to herself by this collision, her cause of action, if any, would be against the Levy alone, and she would have none against the Gardner, arising out of such position of the Gardner.

(2.) As to fault in the Levy, it cannot be held to be a fault in itself that she towed out the two boats astern of her, and that she towed the Gardner stern foremost. Such a mode of towing, however, imposed upon her the necessity and obligation of using great caution. She was starting from a pier. She had a boat alongside of her. To those observing her from a distance not very great, even after she began to move out, it would not appear, in the absence of a previous warning by her, that she was towing a boat astern of her, much less that she was towing a second boat astern of the first boat. Other boats would adopt precautions, in the first place, only to avoid the Levy and the boat alongside of her, and, when it was seen that she had one boat in tow astern of her, it would hardly be thought that she would have another astern of that one. But, if before starting out at all, she had, in view of what she was to tow astern of her, given signals of alarm by her whistle, she would have indicated to other boats that there was something in her proposed movement that required attention from them. She ought to have done this, and she ought to have continued such signals until the Gardner was clear of the pier. It is quite apparent, on the evidence, that the Sumner could and would have stopped and backed sooner than she did, and enough sooner to have avoided the collision, if she had had any previous warning from the Levy that the Gardner was coming out. She slowed and stopped and backed in season to avoid the Levy and the Lappan. But the Levy pulled out the Gardner unexpectedly and without warning to the Sumner, when the Sumner had taken what proved to be effectual measures to avoid the Levy and the Lappan.

The tide swept down the Levy and her tows as soon as they felt its influence. This arose largely from the fact that the two boats were towed astern, one after the other. They were not as much under the control of the Levy as they would have been if they had been alongside of her. This added to the obligation upon the Levy to give warning, especially in view of the approach of a vessel from the direction toward which the tide would carry her and her tow. That was the direction from which the Sumner was approaching. The captain of the Levy testifies that he did not see the Sumner before he started; that he first saw her when the Gardner was outside of the pier; and that the Sumner was then 150 or 200 feet from him. The Levy was going out and was pulling two canal boats lengthwise after her, without giving any signal or warning. On the other hand, the Sumner saw the Levy lying at the end of the pier, and proceeded up the river, without any intimation as to what the Levy was going to do. Then the Levy started out, and the Sumner slowed for her to pass, as being a tug without a tow. Then the Sumner perceived that the Levy had one boat in tow behind her. Thereupon the Sumner stopped her engine. Then the Sumner perceived the Gardner being pulled out behind the Lappan. Thereupon the engine of the Sumner was backed. But the sweep down of the Gardner was such that the collision ensued. On these facts, the Levy was clearly, in fault, for not giving warning to the Sumner.

(3.) I perceive no fault in the Sumner. In the absence of a proper warning from the Levy, the Sumner's navigation was not im-

proper. It is alleged that she was coming up too close to the docks. Undoubtedly, if she had been so far out in the river as to be beyond the reach of the Levy and her tows, there would have been no collision. As it was, if she had been even closer to the docks, she would have passed inside of the Gardner, and the barge would not have hit the Gardner.

The libel must be dismissed, as to the Sumner, with costs; and there must be a decree in favor of the libellants, against the Levy, with costs, with a reference to a commissioner to ascertain the damages sustained by the libellants.